UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TISHA E. RENNER,

                Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

CASE NO. 3:17-cv-5291-BAT

**ORDER REVERSING AND
REMANDING**

Tisha E. Renner seeks review of the cessation of disability benefits. She contends the
ALJ erred when he improperly evaluated medical evidence, her testimony, lay testimony, and
improperly assessed her residual functional capacity ("RFC"). Dkt. 13. The Court concludes
the ALJ erred when he failed to fully develop the record as to the current status of Ms. Renner's
psychological impairments and functionality, and when he failed to consider all evidence of her
physical limitations.

Because these errors were not harmless, the matter is reversed pursuant to sentence four
of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further proceedings
consistent with this order.

**BACKGROUND**

Plaintiff Tisha E. Renner was initially found disabled as of March 2000 due to severe
mental and emotional problems. Tr. 84. Pursuant to the Social Security laws and regulations,

the Commissioner conducts a periodic review to determine whether a recipient continues to be disabled. 20 C.F.R. §§ 404.1588–1599. Ms. Renner's claim was reviewed in 2005 and disability continued. Tr. 116. Ms. Renner began a trial work period in 2006 and continued to work at a substantial gainful level such that benefits terminated. *Id.* Ms. Renner stopped working and her benefits were reinstated effective October 2006. *Id.* On September 27, 2012, the Commissioner determined that as of September 1, 2012, Ms. Renner was no longer disabled. Tr. 86-89. This determination was upheld after a state agency disability hearing (Tr. 114-23), and after a hearing before an Administrative Law Judge ("ALJ"). Tr. 26-37. Ms. Renner sought review in the Appeals Council. Tr. 22. The Appeals Council denied review (Tr. 1-6), making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210. This appeal followed.

## THE ALJ'S DECISION

To determine if Ms. Renner continued to be disabled, the ALJ utilized an eight-step sequential evaluation process pursuant to 20 CFR § 404.1594.[1] The most recent favorable medical decision finding Ms. Renner disabled is the determination dated July 17, 2007 (known as the "comparison point decision" or "CPD"). Tr. 28. At time of the CPD, Ms. Renner had the medically determinable impairments of anxiety and schizophrenia. The ALJ found that after the CPD and through September 1, 2012, Ms. Renner developed obesity and substance dependence, which in addition to her existing personality disorder, cause more than minimal limitations on her ability to perform basic work activities. Tr. 28. The ALJ also noted a non-severe physical impairment related to a 2005 tasing incident. *Id.*

---

[1] *See* 20 C.F.R. § 404.1594(f)(1) through 404.1594(f)(8).

The ALJ found as of September 1, 2012, Ms. Renner's impairments did not meet or equal any Listing (Tr. 28-29); medical improvement had occurred, and Ms. Renner had the RFC[2] to perform light work[3] (Tr. 29); Ms. Renner's medical improvement was related to the ability to work because it resulted in an increased RFC (Tr. 35); and, Ms. Renner was unable to perform any of her past relevant work (certified nursing assistant and retail sales clerk), but she could perform the jobs of surveillance system monitor, injection molding machine tender, and grain picker and was therefore, no longer disabled.  Tr. 35-37.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A.**   **Evaluation of Medical Evidence**

Ms. Renner contends the ALJ erred when he: (1) failed to acknowledge her history of severe mental illness; (2) stated he was giving little weight to the evaluation and opinion of psychologist Lezlie A. Pickett, Ph.D., but then gave great weight to the adjudicative decision of Sheila Gottbreht – which, Ms. Renner contends was based largely on Dr. Pickett's opinion and the Cooperative Disability Investigations Unit ("CDI") report – which again, was based largely on Dr. Pickett's opinion; (3) gave little weight to the opinion of treating physician Paul Schmidt,

---

[2] RFC is what one "can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a) (1), 416.945(a)(1).

[3] Light work is defined in 20 CFR 404.1567(b) as being able to lift twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, with the option to change positions from sitting to standing every half an hour and with occasional superficial interaction with co-workers. Tr. 29.

D.O.; (4) failed to discuss the clinical findings and opinion of physical therapist Wendy Blair; and (5) gave great weight to the opinions of the state agency non-examining physicians and psychologists.

### 1. History of Mental Illness

Ms. Renner was involuntarily hospitalized three times in 2000 due to psychotic symptoms consistent with paranoid schizophrenia. Tr. 325-30, 335-38, 341-42. Ms. Renner was at that time found to be disabled because her mental illness was so severe that it met a Listing. Tr. 355. Ms. Renner was involuntarily hospitalized again in 2005. Tr. 367-76.

In June 2007, Dr. Kodish diagnosed Ms. Renner with posttraumatic stress disorder, psychosis not otherwise specified, depression not otherwise specified, and marijuana dependence (with a GAF of 40). He concluded Ms. Renner would have difficulty performing work activities on a consistent basis without special supervision and maintaining regular attendance in the workplace. Tr. 378-383.

Ms. Renner contends the ALJ erred when he failed to acknowledge that her many psychiatric hospitalizations, along with Dr. Kodish's evaluation, confirm that she has severe mental impairments. Dkt. 14 at 3. The Commissioner argues that to the extent the ALJ failed to discuss Dr. Kodish's 2007 evaluation, it was harmless error because the ALJ in fact found that Ms. Renner has "severe psychological impairments," and thus Dr. Kodish's evaluation was inconsequential to the ultimate nondisability determination. The Commissioner also contends the evidence is remote in time and not particularly probative of Ms. Renner's functioning in 2012. Dkt. 19 at 9-10.

The ALJ in fact found that, "based on her history," Ms. Renner has severe psychological impairments. However, the ALJ erred when he failed to fully develop the record with respect to

the effect of those impairments on her ability to work. Because the ALJ gave little weight to Dr.

Pickett's 2012 consulting report and the reports of state reviewing psychologists (who concluded

that Ms. Renner has no severe mental health impairment), Dr. Kodish's 2007 assessment is the

most current medical opinion which addresses both Ms. Renner's psychological impairments and

the effect of those impairments on her ability to work. The effect of the ALJ's error becomes

clearer when one examines the manner in which he assessed Dr. Pickett's psychological

evaluation and Ms. Gottbreht's adjudicative opinion.

### 2. Leslie A. Pickett, Ph.D. and Sheila Gottbreht

On May 11, 2012, psychologist Lezlie A. Pickett diagnosed Ms. Renner with

malingering, cannabis dependence, and personality disorder not otherwise specified with

antisocial traits. Tr. 424. She concluded Ms. Renner did not evidence any mental health

impairment that would prevent her from functioning very well in a work environment. *Id.*[4] Ms.

Renner requested Dr. Pickett be subpoenaed to testify at the August 19, 2014 hearing. The ALJ

denied that request, explaining:

> …Little weight is given to [Dr. Pickett's] opinion as it is based primarily on the
> claimant's reports which are found to be less than fully credible and Dr. Pickett's
> interpretation of those reports. The claimant did have an essentially normal
> mental status examination, but given the totality of the evidence in the record it
> appears that the claimant does have some limitations from her mental health
> impairments.

Tr. 35.

---

[4] Following Dr. Pickett's examination, a fraud investigation ensued. Tr. 32. That report was
issued on August 28, 2012. Tr. 32 (Exhibit 16). The ALJ gave great weight to the fraud
investigator's observations, which are entwined with the ALJ's discussion of Ms. Renner's
credibility. Because this matter is being remanded for further proceedings, the Court declines to
examine Ms. Renner's contention of error as to the ALJ's treatment of the investigator's report.

Sheila Gottbreht is the disability hearing officer who presided over Ms. Renner's June 25, 2013 hearing. Tr. 32. Ms. Gottbreht details Dr. Pickett's consultative psychological evaluation when she concluded that Ms. Renner is no longer disabled:

> …Based on *Dr. Pickett's current diagnoses*, the claimant's witness' testimony and her job history she would likely continue to have some moderate limitations in her ability to work with co-workers but otherwise is not significantly limited in her ability to perform work related activities. She currently performs her daily activities, maintains her home, cares for her young son, socializes with others and goes out regularly without any significant difficulty.

Tr. 118 (emphasis added). Although the ALJ states he gave little weight to Dr. Pickett's opinion, he gave great weight to Ms. Gottbreht's adjudicative opinion – which was "based on Dr. Pickett's current diagnoses." Tr. 34. The ALJ then concluded Ms. Renner can do all light work and the only limitation included *vis-à-vis* her mental impairment is that she have "occasional superficial interaction with co-workers." Tr. 29.

While there is evidence Ms. Renner's ability to perform her daily activities has improved since the CPD[5], the only current assessment of her mental health is that of Dr. Pickett and the two non-examining state agency psychologists who based their assessments on Dr. Pickett's report (Tr. 454, 456, 468). The ALJ gave little weight to all of these opinions because contrary to their conclusions, he concluded that Ms. Renner does in fact have "severe psychological

---

[5] The ALJ did not unreasonably conclude that Ms. Renner had shown improvement since the CPD. At the CPD she did not have custody of her children and could not maintain her home but now she can do both and she is now the primary and perhaps sole caretaker of her youngest child. In addition, she maintains her home, does her shopping, pays her bills, drives, socializes with friends, goes out to clubs and casinos and is able to feed, bath, dress, and play with her youngest child. Tr. 33. However, reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *See Ryan v. Commissioner of Social Sec*., 528 F.3d 1194, 1200–01 (9th Circuit 2008). They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. *See*, *e.g*., *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

impairments." Tr. 34. However, no medically qualified person testified to how these "severe psychological impairments" affect Ms. Renner's ability to work. Rather, it appears the ALJ simply incorporated the "moderate limitations in her ability to work with co-workers" stated in Ms. Gottbreht's opinion – limitations which in turn, are based on Dr. Pickett's conclusion that Ms. Renner was not suffering from any mental health impairment that would interfere with her ability to function successfully in a work environment. Tr. 424. The Court also notes Dr. Pickett's evaluation was based on a two hour clinical interview after which, Dr. Pickett strongly recommended further investigation and additional psychiatric and personality testing to determine the exact nature of Ms. Renner's current mental status and level of functioning. Tr. 423.

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)). When the claimant is unrepresented, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (2001). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's

1    physicians, continuing the hearing, or keeping the record open after the hearing to allow

2    supplementation of the record.  *Tidwell*, 161 F.3d at 602; *Smolen*, 80 F.3d at 1288.

3          Ms. Renner was unrepresented at the hearing and as acknowledged by the ALJ, "suffers

4    from severe psychological impairments."  The ALJ's failure to fully and fairly develop the

5    record with regard to the present state of Ms. Renner's mental impairment and the effect of that

6    impairment on her ability to perform work activities on a consistent and employable basis

7    constitutes reversible error.  This case is remanded so that Ms. Renner's current mental health

8    status and functionality may be determined.  This is consistent with Dr. Pickett's strong

9    recommendation that additional psychiatric and personality testing be performed to determine

10   the exact nature of Ms. Renner's current mental status and level of functioning. Ms. Renner's

11   testimony and participation in everyday activities should also be reevaluated in light of that

12   determination in concluding whether they are transferable to a work setting.

13          **(3)     Paul Schmidt, D.O.**

14          Ms. Renner contends the ALJ impermissibly discounted the opinion of her treating

15   physician, Paul Schmidt, D.O., who reported that Ms. Renner "has attended physical therapy

16   which provided some pain relief, but it has not proven effective in activity tolerance and

17   stamina" (Tr. 478) and that "[a]lthough I do not have objective evidence to demonstrate her

18   disability, I do feel that her symptoms are consistent with the reported injury, and these could

19   certainly limit her ability to walk and stand for extended periods of time" (Tr. 478).  The ALJ

20   gave little weight to this opinion because Dr. Schmidt had little contact with Ms. Renner, he had

21   no objective evidence to demonstrate her disability, and his opinion is indefinite.  Tr. 34.  This

22   was not error.

23

"The opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes*, 881 F.2d at 751. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ gave three specific and legitimate reasons for discounting Dr. Schmidt's opinion.

First, it appears Dr. Schmidt saw Ms. Renner only one time in February 2013. Tr. 469-70, 476-77. *See Magallanes*, 881 F.2d at 754 ("Dr. Fox had no direct personal knowledge of Magallanes's condition prior to September 1985, and was thus scarcely different from any non-treating physician with respect to that time period.").

Second, in his July 28, 2014 letter, Dr. Schmidt specifically stated he had no "objective evidence to demonstrate her disability." Tr. 478. Dr. Schmidt referred Ms. Renner to physical therapy and is presumably aware of her progress as his signature appears on some of the therapist's notes. *See, e.g.*, Tr. 480. However, it is significant that Dr. Schmidt has no objective evidence to support Ms. Renner's reports of "chronic lower extremity pain due to an injury that occurred in 2005." Tr. 478.

Third, Dr. Schmidt's statement that Ms. Renner's symptoms "could certainly limit her ability to walk and stand for extended periods of time" (Tr. 34, 478) is too vague to constitute an informed opinion for purposes of formulating a concrete opinion that these symptoms would

significantly interfere with Ms. Renner's ability to work. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Dr. Manos' mere statement that Meanel experienced some diminution in her concentration skills falls short of an informed opinion that Meanel's pain and diminished concentration skills would significantly interfere with her ability to work.").

Thus, the ALJ did not err in giving less weight to Dr. Schmidt's opinion.

**(4)    Physical Therapist Wendy Blair, DPT**

Ms. Renner argues the ALJ erred when he failed to discuss or rely on Ms. Blair's clinical findings and opinion to determine any limitations. Dkt. 4 at 5. As previously noted, Dr. Schmidt referred Ms. Renner to physical therapy in March 2013, when Ms. Renner established care for "chronic low back pain and leg pain, increased with activity" which Ms. Renner described as beginning "after a tazer [sic] injury to the buttocks in 2005." Tr. 471. The ALJ concluded that this was a non-severe impairment. Tr. 28.

The ALJ noted Ms. Renner attended physical therapy after she reported difficulty standing and ambulating and she had benefited from the therapy:

> She was referred to physical therapy for her lumbar radiculitis (Exhibit 25F/1). The claimant attended physical therapy. At a March 4, 2013 appointment she reported that her exercises had been helping to increase her tolerance to walking. The claimant demonstrated improved tolerance to activity (Exhibit 26F/3). The claimant reported that she was using the treadmill at her apartment gym as part of her home exercise plan for physical therapy (Exhibit 29F/14).

Tr. 28. The ALJ concluded the record does not contain sufficient evidence to support a diagnosis of nerve damage or "establish that the claimant's alleged nerve damage causes more than minimal limitations on her ability to perform basic work activities." *Id.*

The ALJ did not err in concluding "the record does not contain sufficient evidence to support a diagnosis of nerve damage." Tr. 28. The record reflects that Ms. Renner gave at least two accounts of the tasing incident, there are no diagnostic studies or objective medical findings

to document that Ms. Renner sustained any injury from the 2005 tasing, and the first record of any complaints attributable to a tasing incident do not appear until seven years later. However, and notwithstanding the origin of Ms. Renner's discomfort, Ms. Blair also observed Ms. Renner had "decreased strength, decreased tolerance to activity and decreased cardiovascular endurance" (Tr. 471); continued to "lack full use of [right lower extremity] due to aching pain," and would benefit from "skilled physical therapy to initiate home exercise program to increase LE strength and to initiate a walking program to improve endurance" (Tr. 471). Ms. Blair also noted Ms. Renner's "Current Functional Status" as "limited tolerance to walking, squatting, standing and stair management." Tr. 479. This evidence is consistent with Ms. Renner's testimony that she has difficulty walking more than 100 to 300 feet before starting to have pain in her legs; was prescribed Gabapentin for the pain (Tr. 65-66); and, has been issued State of Washington disabled parking permits (2-7-13 to 8-20-13 (Tr. 278-79) and 8-15-13 to 8-2018 (Tr. 299-300)).

"[I]n evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of functions." *Smolen*, 80 F.3d at 1285 (citation omitted). While physical therapist notes are not medical opinions as that term is defined in the regulations (20 C.F.R. § 404.1527(a)(1)), the ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe (SSR 86-8p (1996)). Even though a non-severe "impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." *Id*.

The ALJ did not address the functional limitations noted by Ms. Renner's physical therapist or give germane reasons for discounting them. This was reversible error as all of Ms.

1   Renner's functional limitations were not included in the ALJ's RFC assessment or in the

2   hypothetical to the VE.  Thus, on remand, the ALJ is instructed to reevaluate this evidence.

3       **(5)    Dr. Virji, Dr. Packer, Dr. Collingwood, and Dr. Harrison**

4           Dr. Virji and Dr. Packer opined that Ms. Renner does not have a severe physical

5   impairment, her physical examinations have been essentially normal, and she has developed

6   obesity.  Tr. 34- 35.  The ALJ gave great weight to these opinions as being consistent with the

7   totality of the evidence in the record.  Tr. 34.  Because later evidence shows that Ms. Renner may

8   have additional physical limitations, the ALJ is instructed to re-evaluate these opinions on

9   remand.

10          Dr. Collingwood and Dr. Harrison opined that Ms. Renner does not have a severe mental

11  health impairment because she has made a significant improvement and was without

12  psychological symptoms.  *Id.*  As previously noted, these two non-examining state agency

13  psychologists based their assessment of Ms. Renner's mental health on Dr. Pickett's report (Tr.

14  454, 456, 468), and the ALJ gave little weight to these opinions because he found Ms. Renner

15  "does have severe psychological impairments."  Tr. 34.  Thus, the ALJ correctly discounted

16  these opinions where they conflicted with Ms. Renner's mental health history.

17  **B.    Remand, SSR 16-3p, Other Issues**

18          Ms. Renner contends this case should be remanded for immediate reinstatement of

19  benefits or alternatively, for further proceedings.  The Court remands for further administrative

20  proceedings because not all factual issues have been resolved in this case.

21          Usually, "[i]f additional proceedings can remedy defects in the original administrative

22  proceeding, a social security case should be remanded."  *Lewin v. Schweiker*, 654 F.2d 631, 635

23  9th Cir. 1981).  A remand for an immediate award of benefits is appropriate, however, only in

"rare circumstances." *Treichler v. Commissioner of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Before ordering that extreme remedy, three requirements must be met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1019. Moreover, even if all three requirements are met, the Court retains "flexibility" in determining the appropriate remedy. *Id*. at 1021. "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. at 1101.

Here, the Court has determined that remand for further proceedings is appropriate as the record is incomplete as to how Ms. Renner's psychological impairments affect her ability to perform work activities on a consistent and employable basis. In addition, remand is appropriate so that the ALJ may reassess medical evidence relating to Ms. Renner's physical limitations.

Because the remand is for further proceedings, the Court declines to examine Ms. Renner's other contentions (improperly evaluating her testimony and lay testimony, and improperly assessing her RFC). Since the ALJ's decision issued, the agency republished SSR 16-3p, a ruling that eliminated the use of the term "credibility" and clarified that subjective symptom evaluation is not an examination of an individual's character but rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency,

or severity of an individual's symptoms impact his or her ability to work. SSR 16-3p, 82 Fed. Reg. 49,463 & n.1. Adjudicators will apply SSR 16-3p in making decisions on or after March 28, 2016. *Id.* at 49,468. The ALJ's adverse credibility determination is inextricably entwined in the evaluation of Ms. Renner's symptom testimony, the medical evidence, corroborating lay testimony, and ultimately in assessing her RFC. The ALJ should be afforded the opportunity to apply SSR 16-3p to the record evidence without being burdened by the Court's advisory opinion employing an outdated analytical framework.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings. On remand, the ALJ shall develop the record as necessary, including further investigation and additional psychiatric and personality testing to determine the exact nature of Ms. Renner's current mental status and level of functioning; reassess medical evidence relating to Ms. Renner's physical limitations; revisit Ms. Renner's symptom testimony in accordance with SSR 16-3p; hold a new hearing; proceed with the sequential analysis from an assessment of RFC forward; and issue a new decision.

DATED this 18th day of January, 2018.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge